**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIM. NO.: 10-cr-0012** |
| v. | ) | |
| | ) | |
| ERROL NELSON | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Errol Nelson's ("Defendant") Motion to Suppress. Defendant was indicted for several firearm charges including possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), possession of firearm within 1,000 feet of a school in violation of 18 U.S.C. § 922(q)(2)(a) and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Defendant seeks to suppress a chrome Colt .45 Model 1911 handgun seized by police on February 4, 2010, as well as a statement that he allegedly made to police following seizure of the gun. The Government opposes Defendant's Motion. A hearing on Defendant's Motion to Suppress was held on October 6, 2010 at which the Government presented one witness, Officer Uston Cornelius of the Virgin Islands Police Department ("VIPD"). Defendant similarly called one witness, the Defendant's ex-girlfriend, Theresa Burnette. Upon consideration of the parties' briefs and testimony and evidence presented at the suppression hearing, and for the reasons stated below, the Court denies Defendant's Motion to Suppress.

## I.  Findings of Fact

In the early afternoon of February 4, 2010, Officer Cornelius, a nineteen year veteran of the VIPD, was off-duty and driving west on the Queen Mary Highway in a VIPD police cruiser. He received a transmission from VIPD Central Dispatch informing him that a domestic disturbance was in progress at the Orange Grove Villas.  The broadcast mentioned that Errol Nelson was the suspect.  Officer Cornelius was familiar with Errol Nelson "from the streets" and knew that he had "served time."  He pulled off to the side of the road to listen to the broadcast. Central Dispatch continued to air information about the domestic disturbance call including that the 911 operator heard a "commotion" going on in the background of the call.  Officer Cornelius turned his vehicle around and headed towards the Orange Grove Villas in order to "intervene". While en route to the Orange Grove Villas, Officer Cornelius received a radio message from Officer Luis Ortiz of the VIPD informing him that there was a warrant out for the arrest of Errol Nelson.  At that time, Officer Ortiz provided no further details concerning this outstanding warrant to Officer Cornelius.

Officer Cornelius was the first police officer to arrive at the Orange Grove Villas. Upon arriving, he immediately spotted Defendant walking in the nearby parking area outside the apartments.  Officer Cornelius noticed two other individuals "in the outskirts," a woman whom he later identified as Theresa Burnette, the 911 caller, and another male individual. Unarmed, Officer Cornelius parked his police cruiser, stepped out, and approached Defendant who was now standing on the sidewalk.  He advised Defendant that he was responding to a domestic disturbance call and requested that Defendant approach his car so that he could be frisked for

safety purposes.[1]  Officer Cornelius placed his hand on Defendant to guide him back to his police cruiser at which point Defendant pushed his hand away. A struggle ensued.  During the struggle, Officer Cornelius heard a hard object fall to the ground.  He subdued Defendant and placed him in handcuffs. While cuffing Defendant, Officer Cornelius noticed that the object which had fallen from Defendant during the scuffle was a chrome handgun.  Shortly after Defendant was cuffed, other VIPD officers arrived.  One of them retrieved the chrome firearm – a Colt .45 Model 1911 – from the sidewalk.[2]

After placing Defendant in handcuffs, Officer Cornelius stood Defendant up and advised him of his *Miranda* rights.  Officer Cornelius searched Defendant and found two plastic bags containing a green leafy substance which later tested positive for marijuana.  Following advisement of his rights, Defendant allegedly said "Look Cornelius, I didn't want to go against the vehicle because I knew I had the gun on me."   Officer Cornelius then placed Defendant in the back of his police cruiser.

## II.    Analysis

Defendant seeks to suppress the firearm and the statement that he allegedly made to Officer Cornelius.  His Motion raises four issues: (1) whether the initial seizure of Defendant was a *Terry* stop or an arrest; (2) whether Officer Cornelius possessed the requisite reasonable suspicion/probable cause to make that *Terry* stop/arrest; (3) whether Officer Cornelius was

---

[1] Ms. Burnette testified that Officer Cornelius immediately got out of his vehicle and approached Defendant "aggressively" and "rushed him, almost like, attack [sic] him" without saying anything.  The Court does not find Ms. Burnette's testimony to be credible on this point.

[2] Ms. Burnette testified that no gun fell from Defendant during the struggle and that the gun found by police was located underneath a bush in an area away from where the struggle took place.  The Court does not find Ms. Burnette to be credible on this point.  Even if it did, however, this would not require suppression of the firearm, as discussed below.

justified in frisking Defendant; and (4) whether Defendant's alleged statement to police was obtained in violation of his Fifth Amendment right against self-incrimination. The Court addresses each of these in turn.

### a. *Terry* **Stop or Arrest?**

When Officer Cornelius arrived at the Golden Grove Villas, he commanded Defendant to approach his vehicle so that he could be frisked. Officer Cornelius then placed his hand on Defendant to guide him toward the vehicle. There is no question that Officer Cornelius' actions toward Defendant amounted to, at a minimum, a *Terry* stop "seizure." *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *United States v. Dupree*, __F.3d__, 2010 WL 3063290, at *9 (3d Cir. 2010) ("[A] seizure occurs within the meaning of the Fourth Amendment when there is either the 'laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or 'submission to the assertion of authority.'" (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991))); *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) ("A person is seized for *Terry* purposes when, taking into account all of the circumstances surrounding the encounter, the police conduct would . . . communicate[ ] to a reasonable person that he was not at liberty to ignore the police presence and go about his business." (quoting *Kaupp v. Texas*, 538U.S. 626 (2003))). The question remains as to whether Officer Cornelius' conduct constituted an arrest.

In considering whether a seizure is a *Terry* stop or an arrest, courts consider the duration of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the

police could have served their purposes. *United States v. Sharpe,* 470 U.S. 675, 684-87 (1983). Here, the Court finds that the initial seizure of Defendant was a *Terry* stop and not an arrest. Officer Cornelius approached Defendant, explained that he was there to investigate a domestic disturbance call and then requested that the Defendant proceed to his vehicle to be searched for safety reasons. This initial detention was extremely brief, lasting only a few seconds. While Officer Cornelius made physical contact with Defendant to guide him toward his police cruiser, such contact was not excessive or unreasonable under the circumstances and did not elevate the brief detention into an arrest. *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) ("In effectuating a valid [*Terry*] stop, police officers are allowed to use a reasonable amount of force.").

Defendant's resistance to Officer Cornelius prompted the ensuing scuffle. After the struggle, Defendant was placed in handcuffs. At that point, the *Terry* stop may have "ripened" into an arrest. However, Officer Cornelius had sufficient probable cause to arrest Defendant for unlawfully interfering with an officer[3] and for unlawful possession of a firearm based on his observation of the firearm, which had fallen during the struggle, and his knowledge that Defendant had previously "served time." *United States v. Myers*, 308 F.3d 251, 258 (3d Cir. 2002) ("A *Terry* stop cannot justify an arrest unless additional developments that arise during the course of the temporary detention establish the necessary probable cause for an arrest."); *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010) (holding that "reasonable suspicion may "ripen" or "develop" into probable cause for an arrest if a *Terry* stop reveals further evidence of criminal conduct.") (citation omitted).

_____

[3] *See* 14 V.I.C. 1508 (2010) (" Whoever willfully resists, delays or obstructs any public officer in the discharge, or attempt to discharge any duty of his office, shall, when no other punishment is prescribed by this title, be fined not more than $500 or imprisoned not more than 1 year, or both.").

**b. Did Officer Cornelius Have Reasonable Suspicion to Support Defendant's Initial Detention?**

"[A] *Terry* stop is consistent with the Fourth Amendment whenever the police officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006). "To determine whether reasonable suspicion exists [the court] must consider the totality of the circumstances-the whole picture." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (court must consider totality of circumstances "[t]o see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing"). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271 (2000). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). "[T]he determination of reasonable suspicion must be made on common sense judgments and inferences about human behavior." *Robertson*, 305 F.3d at 167. The Court must "accord deference to an officer's judgment of whether criminal activity is taking place with an understanding that whether an officer has reasonable suspicion to warrant a stop ... is often an imprecise judgment." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citations omitted). Finally, the Government bears the burden of showing that the seizure was reasonable. *United States v. Ritter*, 416 F.3d 256, 261

(3d Cir. 2005) ("On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable.").

The Court finds that, under the totality of the circumstances, Officer Cornelius had a reasonable, articulable suspicion to briefly detain Defendant for further investigation. First, "[i]t is well settled that reasonable suspicion can be based on information gathered from another person." *United States v. Brown*, 448 F.3d 239, 248 (3d Cir. 2006). This includes information obtained by police from 911 calls. *See United States v. Johnson,* 592 F.3d 442, 450 (3d Cir. 2010) (finding that 911 call containing reliable information provided reasonable suspicion to detain occupants of cab); *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (911 call sufficient to provide reasonable suspicion). Officer Cornelius had reason to believe that the information provided by the 911 caller was reliable as the caller had identified Errol Nelson as the suspect and Central Dispatch reported that the 911 operator heard a commotion in the background. These facts were an indication that the 911 caller was an eye witness, relaying real time observations. *See Johnson*, 592 F.3d at 449 ("The details of Anderson's 911 call also made clear that she was reporting not just recent, but ongoing criminal activity that she was observing during her emergency call."); *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000) ("[W]hen an informant gives the police information about a neighbor . . . or someone nearby (as in our case), the informant is exposed to a risk of retaliation from the person named, making it less likely that the informant will lie."). Furthermore, Officer Cornelius arrived at the scene only minutes after receiving the dispatch and observed Defendant – identified by Central Dispatch as the suspect in the domestic disturbance call – standing directly in front of the Orange Grove Villas. *See United States v. Goodrich*, 450 F.3d 552, 562 (3d Cir. 2006) (finding that police had reasonable suspicion to perform traffic stop on defendant in part because "it is clear to us that the

geographical and temporal proximity of Kinne's vehicle (and therefore Goodrich himself) to the scene of the reported theft in progress is another important factor militating strongly in favor of the validity of the stop.").

Furthermore, the Supreme Court has recognized the latitude that police officers are given when responding to reports of domestic disputes. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 186 (2004) ("Officers called to investigate domestic disputes need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim."). Officer Cornelius was responding to a domestic disturbance call that he had reason to believe might have involved violence based on Central Dispatch's report of a background commotion. *See* 16 V.I.C. § 93(c)(3) (2010) (stating that police officers must consider "whether the dispatcher indicated a report of imminent violence or violence in progress" in determining whether there is probable cause to make an arrest for violating Virgin Islands' domestic violence laws). Based on the information relayed to him by Central Dispatch, Officer Cornelius had a reasonable, articulable suspicion that Errol Nelson was engaged in criminal activity – a potentially violent domestic disturbance. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 763 (7th Cir. 2008) (finding that police had reasonable suspicion to detain Hardrick for investigation into domestic disturbance call because he fit description given by police dispatch); *United States v. Delano*, 348 Fed. Appx. 258, 259 (9th Cir. 2009) (unpublished) (finding that police had reasonable suspicion to "detain [defendant] for further questioning" once they learned that he was "the man reported to be involved in the domestic violence incident."). Accordingly, the investigatory detention of Defendant was justified.

### c. Was the Search of Defendant Justified?

Even though the Court has found that Officer Cornelius had a reasonable, articulable suspicion for detaining Defendant, we are nonetheless required to independently assess whether the search of Defendant was justified. *United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010) ("The stop and the search are independent actions, and each requires its own justification.") (citation omitted); *see also Arizona v. Johnson*, __U.S.__, 129 S.Ct. 781, 784 (2009) ("First, the investigatory stop must be lawful . . . Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.").

"In *Terry*, the Supreme Court held that a police officer, during the course of a *Terry* stop, may conduct a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual . . . the test is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Edwards*, 53 F.3d 616, 618 (3d Cir. 1995) (citations omitted). However, "[t]he officer need not be absolutely certain that the individual is armed." *Terry*, 392 U.S. at 27.

Here, Officer Cornelius was responding to a domestic disturbance that, to his knowledge, might have been violent. *See Lester v. State,* 651 S.E.2d 766, 768 (Ga. Ct. App. 2007) (finding that pat down of defendant was justified because "the facts reported in the 911 call raised the possibility of a domestic violence situation, causing [the officer] concern for both the woman's safety and his own."); *Bratcher v. State*, 661 N.E.2d 828, 831 (Ind. Ct. App. 1996) (finding that officer responding to domestic disturbance call was justified in frisking defendant for officer safety purposes); *Dean v. State*, 2003 WL 22807550, at *2 (Tex. Ct. App. 2003) (unpublished)

(finding that pat down of domestic disturbance suspect was objectively reasonable because "[i]n a domestic disturbance an officer has every reason to suspect foul play."); *but see People v. Wells*, 2010 WL 3172215, at \*10 (unpublished) (Ill. App. Ct. Aug. 6, 2010) (finding that "the nature of domestic disturbances" was insufficient justification to handcuff and search domestic disturbance suspect prior to questioning him). The 911 caller had identified the Defendant by name and Officer Cornelius knew that Defendant had a prior criminal history. *See United States v. Mathurin*, 561 F.3d 170, 177 (3d Cir. 2009) (holding that criminal history alone is an insufficient basis for reasonable suspicion but is relevant factor when corroborated with additional evidence). Officer Cornelius was unarmed and was the only officer on the scene when he arrived. He testified that he needed to frisk Defendant so that he could safely conduct his investigation into the domestic disturbance call. Under these circumstances, the Court finds that Officer Cornelius' frisk of Defendant was objectively reasonable. *See United States v. Manjarrez*, 348 F.3d 881, 887 (10th Cir. 2003) (finding that police officer was justified in frisking defendant prior to conducting a consent search of defendant's automobile because the officer, "unassisted at the time, could not reasonably be expected to leave Defendant in his patrol car, turn his back on Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons."). Accordingly, the chrome Colt .45 firearm, which was the fruit of Officer Cornelius' attempt to frisk Defendant, is admissible.[4]

---

[4] Ms. Burnette testified that the firearm found by Officer Cornelius did not drop from Defendant during the scuffle, but was instead found by him underneath a bush in an area removed from the scene of the scuffle. This sentiment was echoed by Defendant in his Motion, wherein he stated that Officer Cornelius "arrested Defendant because of a weapon that was on the public road that he assumed came from the Defendant." (Def.'s Mot. at 3, Doc. 19.) As noted above, the Court does not credit Ms. Burnette's testimony on this score. Even if it did, however, this would prove equally unavailing to Defendant as this would negate his "standing" to contest discovery of the firearm. *See United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) ("To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment

### d. Is Defendant's Alleged Statement Admissible?

Defendant moves to suppress his alleged statement to Officer Cornelius on the grounds that it was obtained in violation of his Fifth Amendment right against self-incrimination. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a defendant's statements made in the course of a custodial interrogation are not admissible as evidence unless the defendant receives appropriate warnings. However, *Miranda*'s safeguards only apply to police interrogation or its "functional equivalent . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Arizona v. Mauro*, 481 U.S. 520, 526-27 (1987) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Here, there is no evidence that Defendant made the alleged statement in response to interrogation or its functional equivalent; it is therefore admissible. *Mauro*, 481 U.S. at 529 (holding defendant's statements admissible because "his volunteered statements cannot properly be considered the result of police interrogation."); *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.") Moreover, Officer Cornelius testified that Defendant made the alleged statement after he was arrested and mirandized. Defendant offered no evidence to the contrary and does not contend that he did not

---

rights were violated by the challenged search or seizure.") (citing *Rakas v. Illinois*, 439 U.S. 128, 132-133 (1978))); *United States v. Murray*, 2010 WL 3069485, at *7 (D.V.I. August 2, 2010) (Finch, J.,) ("Standing to challenge a search requires that the party challenging the search have both an objectively and subjectively reasonable expectation of privacy in the property searched." (citing *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000))); *United States v. Xavier*, 2010 WL 446917, at *3 (D.V.I. February 2, 2010) (Finch, J.) (denying motion to suppress because defendant disclaimed any interest in the area searched). Defendant has no reasonable expectation of privacy in the shrubbery on the street outside of the Orange Grove Villas. *See Bond v. United States*, 529 U.S. 334, 337 (2000) (noting that evidence visible to the public does not implicate Fourth Amendment); *see also United States v. Acosta*, 965 F.2d 1248, 1252-53 (3d Cir. 1992) (holding that defendant had no reasonable expectation of privacy in common areas of multi-unit apartment building).

understand his rights.  Accordingly, the Court finds that Defendant's alleged statement is admissible.

## III.    <u>Conclusion</u>

For the foregoing reasons, the Court concludes that under the totality of the circumstances, Officer Cornelius had reasonable suspicion to detain Defendant and that the frisk of Defendant was objectively reasonable.  The Court also finds that Defendant's alleged statement to Officer Cornelius was voluntary and not the result of a custodial interrogation and therefore does not implicate his Fifth Amendment rights.  Accordingly, it is hereby,

**ORDERED** that Defendant's Motion to Suppress is **DENIED**.

**ENTERED**:

Dated: October 13, 2010

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE